UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDALL ALLRED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INNOVA EMERGENCY MEDICAL ASSOCIATES, P.C.; STEPHEN SHERICK,<br><br>　　　　Defendants. | Case No. 18-cv-03633-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS FOR FORUM NON CONVENIENS**<br><br>Re: Dkt. No. 9 |

Defendants Innova Emergency Medical Associates, P.C. and Stephen Sherick move to enforce the forum selection clause in the written Physician Employment Agreement with plaintiff Kendall Allred and to dismiss or transfer his lawsuit for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud and intentional deceit, negligent misrepresentation, and violations of California Labor Code §§ 202, et seq. for failure to pay wages and California Labor Code § 2013 for waiting time penalties. Allred claims that an oral contract entered into prior to the written agreement is the basis for his claims, but he makes no showing that the forum selection clause is unfair, unreasonable, fraudulently induced, or contravenes a strong public policy. The written agreement contains both an integration clause and a severability clause. There is no need for oral argument on this motion; the hearing is VACATED. The clause is valid and enforceable, and I **GRANT** defendants' motion.[1]

---

[1] Because the forum selection clause issue is dispositive, I will not address defendants' arguments regarding personal jurisdiction.

# BACKGROUND

## I. FACTUAL BACKGROUND[2]

Kendall Allred, a resident of San Mateo County, California, is a medical doctor specializing in emergency medicine and a former employee of defendant Innova Emergency Medical Associates, P.C. ("Innova"). Complaint ("Compl.") attached as Exhibit 1 to the Notice of Removal [Dkt. No. 1] ¶¶ 24, 39. Innova is an emergency medicine contract group based in Denver, Colorado, which provides staffing, management, and consulting services to hospital emergency departments. *Id.* ¶¶ 11, 24. During the period of time covered by the Complaint, Innova had contracts with hospitals in New Mexico, Colorado, Michigan, and Arizona. *Id.* ¶¶ 24, 25, 30.

Defendant Stephen Sherick founded Innova in 2010 and was Innova's Chief executive officer. *Id.* ¶ 11. Allred and Sherick met in 2004 while they were medical students at separate schools. *Id.* ¶ 7. After completing his residency, Allred began working for TeamHealth, another emergency medicine contract group. *Id.* ¶ 8. Sherick attempted to recruit him to Innova over time, and their negotiations got serious in early 2015. *Id.* ¶ 13.

Allred insisted to Sherick that in order to join Innova, he needed to be an equity holder entitled to share in its profits. *Id.* ¶ 14. Allred and Sherick agreed that he would be a "partner" in Innova. *Id.* ¶ 15. In exchange, Allred would assume, and/or otherwise perform, a significant portion of Innova's work at any medical facility from which he would receive profit sharing, successfully manage Innova's business at the hospitals the company already worked with, and help Innova grow by acquiring new business with other hospitals. *Id.* ¶ 16. Sherick stated that helping Innova to acquire new clients would be the most important factor in determining the amount of equity Allred would receive. *Id.*

Allred discussed specific equity and profit sharing amounts, though Sherick would not agree to mandatory minimums before seeing Allred's performance. *Id.* ¶¶ 17-18. Allred proposed that for the existing business he assumed, he would take between 10-20% of monthly billing

---

[2] I accept Allred's allegations in the Complaint as true for purposes of this motion.

2

profits based on the amount of work he did. *Id.* ¶ 17. For business that Allred originated, he proposed that he take between 20-40% of net monthly profits based on the amount of work he did. *Id.* He also sought grants of at least 2% equity per year, with the possibility of a larger grant based on his performance, up to a maximum of 20% total ownership in Innova. *Id.* Allred alleges that Sherick agreed with the proposed ranges but only if Allred complied with his obligations. *Id.*

**A. The Physician Employment Agreement**

On May 30, 2015, the parties executed a written "Physician Employment Agreement" ("PEA"). *Id.* ¶ 21. Exhibit A of the PEA, set out the terms of Allred's compensation. It states, in relevant part, that Allred, as the sole basis for compensation, agreed to accept:

> $190.00/hour for scheduled 24 hour shifts with a $95/hour reduction of that rate during any hours if there is an additional 12 hours of AHP cross coverage over the standard 12 hours/day ($3,420.00 total per twenty-four hour shift) by [Allred] for services rendered at Gila Regional Medical Center in Silver City, NM . . . OR . . . $190/hour for scheduled 12 hour shifts ($2,280.00 total per twelve hour shift by [Allred] for services rendered at Gila Regional Medical Center in Silver City, NM . . . AND Administrative time by [Allred] will be paid at the clinical rate for the given facility. Typically, administrative hours for Medical Directorship are around fifteen (15) hours per month . . . [and Innova] reserves the right, but not the obligation, to pay bonuses over and above the compensation set forth above, based upon the standard of excellent expectations outlined in Section 18.

PEA Ex. A [Dkt No. 1].

The PEA also contains a forum selection clause and choice of law provision. It states:

> It is understood and agreed by and between the parties that this Agreement, to the fullest extent possible, is to be construed in accordance with the laws of the State of Colorado, and that the proper venue for any disputes pertaining to or arising out of this Agreement is in the City and County of Denver, State of Colorado.

PEA ¶ 16. It contains a severability clause:

> If any provision of this Agreement is determined to be void or invalid for any reason, the remaining provisions of this Agreement shall remain full effective.

*Id.* ¶ 17. And it includes an integration clause:

> This Agreement constitutes the entire Agreement by and between the parties and cannot be altered or amended except by an Agreement in

3

writing executed by all of the parties hereto.

The Executive Addendum to the PEA contained clauses related to profit sharing and equity. The Facility Profit Sharing Bonus and Loss Sharing Expenses clause states:

> During the service term and after a one hundred eighty (180) day period, [Allred] shall be eligible to receive a Facility Profit Sharing Bonus as a percentage of monthly profits earned from any facilities where the Employee Physician exercises an important administrative presence such as Facility Medical Director, Area Director, or similar administrative role[ ]. The percentage of monthly profits from each facility will vary based level of involvement in the overall operations and financial solvency of said facilities. [Sherick] and [Allred] will agree upon these percentages as defined in any Addendums to follow.

PEA Executive Addendum [Dkt. No. 1] ¶ 2(a). The Future Equity clause states:

> [Allred] shall be eligible for a percentage of [Innova] equity after one (1) year with the company. [Allred's] performance and demonstration of value to the [Innova's] strategic priorities and ability to acquire new business will be some of the factors used in the initial calculation of the percentage of Company equity earned. Total percentage of equity after the first year will be established by negotiation between [Sherick] and [Allred] at that time.

*Id.* ¶ 2(c).

Allred believed the PEA contained binding promises for profit sharing and equity and that it was binding when he signed it. Declaration of Kendall Allred ¶ 16 [Dkt. No. 17].

**B. Allred's Work for Innova**

In June 2015, Allred began working in an administrative capacity for Innova. Compl. ¶ 24. He took over Sherick's work with the New Mexico hospital and helped secure new business with a Michigan hospital, ultimately serving as medical director of both operations. *Id.* ¶¶ 25, 27. He also identified potential clients at three California hospitals and one Arizona hospital. *Id.* ¶ 28. Innova was successful in securing a contract with the Arizona hospital but not with any of the potential California clients. *Id.* ¶¶ 29-30. Allred claims that due to his successful management of the Michigan and Arizona hospitals, Innova was able to expand into neighboring hospitals in those states. *Id.* ¶ 33.

**C. Allred Departs Innova**

In December 2015, after the 180 day waiting period described in the Facility Profit Sharing

1 Bonus and Loss Sharing Expenses clause had elapsed, Allred repeatedly asked Sherick about the
2 status of his profit sharing payments. *Id.* ¶¶ 34-35. Sherick asked him to wait while Innova
3 attempted to write new contracts for all members of its executive team, including Allred. *Id.*¶ 35.
4 Sherick stated that he wanted the executive team's contracts to be consistent regarding pay and
5 benefits and that he would provide a "revised" contract confirming his employment benefits,
6 including profit sharing and equity grants. *Id.*

7 In June 2016, after working for Innova for a full year, Allred asked Sherick about his first
8 equity grant. *Id.* ¶ 36. Sherick again asked Allred to wait while Innova drafted consistent
9 contracts for its executive team. *Id.* In approximately July 2016, Allred threatened to resign from
10 Innova if he was not given his share of profits and granted equity subject to the alleged oral
11 agreement. *Id.* ¶ 37. Sherick and other Innova employees repeatedly tried to persuade Allred to
12 stay and Sherick allegedly told Allred that Innova would "make good" on the equity and profit
13 sharing Allred had been promised. *Id.*

14 In approximately May 2017, Sherick presented Allred with a proposed revised written
15 contract which contained profit sharing and equity numbers far below the ranges Allred and
16 Sherick had discussed when Allred was recruited. *Id.* ¶ 38. Allred ceased working for Innova in
17 July 2017. *Id.* ¶ 39. He claims that he is entitled to approximately $300,000 in profit sharing from
18 his work at the New Mexico, Michigan, and Arizona hospitals, as well as 12% equity in Innova.
19 *Id.*

## LEGAL STANDARD

Forum selection clauses are "presumptively valid," and "honored" "absent some compelling and countervailing reason." *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). "The party challenging the clause bears a heavy burden of proof and must clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.* at 1140 (internal quotation marks and citation omitted). A forum selection clause may be unreasonable if: (1) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "enforcement would

contravene a strong public policy of the forum in which suit is brought." *Id.*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013). When a motion to dismiss is based on a forum selection clause, rather than solely on the doctrine of forum non conveniens, the Supreme Court has held that a district court cannot consider the "private interest" factors, such as the plaintiff's choice of forum and the convenience of parties and witnesses. *See id.* at 62–64. Instead, the court may only weigh the "public interest" factors, which "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a case concerns an enforcement of a forum selection clause, section 1404(a) provides a mechanism for its enforcement and "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Marine*, 571 U.S. at 59-60 (internal quotation omitted). Plaintiff bears the burden of showing these exceptional circumstances that make transfer inappropriate. *Id.* at 64. Plaintiff must show either that the forum selection clause is not valid or that the public interest factors recognized under section 1404(a) make transfer inappropriate. *Id.* at 64; *see also Bayol v. Zipcar, Inc.*, No. 14–cv–02483–TEH, 2014 WL 4793935, at *1 (N.D. Cal. Sept. 25, 2014).

**DISCUSSION**

**I. THE FORUM SELECTION CLAUSE IS ENFORCEABLE**

Allred contends that the PEA is unenforceable because the Facility Profit Sharing Bonus and Loss Sharing Expenses clause and Future Equity Clause are unenforceable material terms that void the PEA in its entirety under Colorado law, including the PEA's forum selection clause. Opposition ("Oppo.") [Dkt. No. 15] 7-11. He asserts that he is suing over the oral agreement he made with Sherick over profit sharing and equity grants, not the PEA. *Id.* Defendants argue that I

6

must first determine whether the forum selection clause contained in the PEA is unfair or unreasonable, or was fraudulently induced, before analyzing the validity of the PEA as a whole. Reply [Dkt. No. 20] 3-4. They assert that the forum selection clause in the PEA should be enforced and that the case should be dismissed for forum non conveniens so that it may properly be brought in Colorado state court or transferred to the federal district court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). Mot. 4.

Colorado follows the United States Supreme Court's decision in *M/S Bremen v. Zapata Off–Shore Co.*, holding that a forum selection clause should control unless the party seeking to void the clause shows (1) that the clause was unreasonable and unjust; (2) that it was the product of fraud or overreaching; or (3) that enforcement of the clause would contravene a strong public policy of the forum in which suit is brought. *Cagle v. Mathers Family Tr.*, 295 P.3d 460, 464 (2013)(citing 407 U.S. 1, 15(1972)). There are no "material discrepancies" between Bremen's treatment of forum selection clauses and Colorado law's treatment of forum selection clauses. *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997). Under Colorado law, once the moving party has demonstrated the existence of a forum selection clause, "the trial court must require any party opposing the motion not merely to allege, but to demonstrate by a preponderance of the evidence that the clause is unfair or unreasonable, or was fraudulently induced." *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1161 (Colo. App. 2006).

"A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable.'" *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *Bremen*, 407 U.S. at 17). However, "a forum selection clause is unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." *Id.* (internal citations and quotations omitted). "Where a forum selection clause agreed to during arms-length negotiations by sophisticated parties, specifies venue and jurisdiction with mandatory or obligatory language, the clause is presumptively valid." *Plum Creek Wastewater Auth. v. Aqua–Aerobic Sys., Inc.*, 597 F. Supp. 2d 1228, 1230 (D. Colo. 2009) (internal citations omitted). Generally, "forum selection clauses can be equally applicable to contractual and tort causes of

action. . . . Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (internal citations omitted); *Zako v. Hamilton Co.*, No. 5:15-CV-03162-EJD, 2016 WL 344883, at *3 (N.D. Cal. Jan. 28, 2016) ("a forum-selection clause will apply to claims that arise from or relate to the contract containing the clause"). The party contesting the forum selection clause must show that following public interest factors overwhelmingly disfavor a transfer: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001); *Marine*, 571 U.S. at 67.

Allred appears to concede that the forum selection clause would be valid if the PEA was valid overall. Oppo. 7 n.1. He does not identify any strong public policy that would be contravened by enforcement of the PEA's forum selection clause. *AOL*, 552 F.3d at 1083. I am also unable to identify any public policy that would weigh against the presumption that the forum selection clause is valid. *Id.* Allred also fails to show, or even argue, that any of the above public interest factors overwhelmingly disfavor transfer or dismissal. *Marine*, 571 U.S. at 67. Further, the PEA is not a contract of adhesion, but appears to be the result of an arms-length negotiation between two sophisticated parties. *Plum Creek*, 597 F. Supp. 2d at 1230.

Allred's notion that his lawsuit against Defendants is about the alleged oral agreement, rather than the PEA, fails. Oppo. 7. The PEA contains an incorporation agreement which states: "<u>Entire Agreement.</u> This Agreement constitutes the entire Agreement by and between the parties and cannot be altered or amended except by an Agreement in writing executed by all of the parties hereto." PEA ¶ 13. Allred's argument is foreclosed by the PEA's express statement that it "constitutes the entire agreement" between Allred and Innova. *Patton v. Mid-Continent Sys., Inc.*, 841 F.2d 742, 745 (7th Cir.1988) (noting that if the meaning of a contract is unambiguous, evidence of oral negotiations leading up to the written contract and extrinsic evidence outside the "four corners" of the written contract is inadmissible to vary that meaning). Moreover, the forum selection clause is severable under the PEA's severability clause, and Allred offers no evidence

that the forum selection clause is unfair, unreasonable, or was fraudulently induced. *Id.*

Allred asks me to conduct an analysis of the merits of the PEA's validity in contravention of *Bremen* and its progeny, which I cannot do. I find that the forum selection clause in the PEA is valid and enforceable and will grant defendants' motion.

## II. DISMISS OR TRANSFER?

The forum selection clause does not specify whether this case should be adjudicated in state or federal court. It states only that "proper venue for any disputes pertaining to or arising out of this Agreement is in the City and County of Denver, State of Colorado." PEA ¶ 16.

The Ninth Circuit has held that when a forum selection clause specifies a county, and there are both state and federal courts sitting in that county, it may fairly be read to include both state and federal court. *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1206 (9th Cir. 2011). The City and County of Denver contains both state and federal courthouses. The language of the forum selection clause is ambiguous; there are no indicia in the PEA to suggest that one or the other was contemplated by the agreement.

If Allred would like this case transferred to the federal district court sitting in Denver, Colorado, he must notify the court within seven days of the filing of this order. Otherwise, I will dismiss the case, and then he can choose where to file.

## CONCLUSION

I find that the forum selection clause contained in the PEA is valid and enforceable. Defendant's motion to dismiss for forum non conveniens is **GRANTED** and the complaint is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: October 1, 2018

William H. Orrick
United States District Judge

9